**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Roy L. Dampier, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 24-cv-04961 |
| | ) | |
| TA Operating, LLC, d/b/a | ) | The Honorable John F. Kness |
| TravelCenters of America, Shaun | ) | |
| Mitchell, and a currently unknown | ) | |
| Travel Center Manager, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND
DISCRIMINATION</u>**

Plaintiff, Roy L. Dampier, by and through his attorney, James C. Vlahakis, submits the following as his First Amended Complaint against Defendants TA Operating, LLC d/b/a TravelCenters of America, Shaun Mitchell, and a currently unknown Travel Center Manager:

**I. Parties, Jurisdiction and Venue**

1.      As detailed below, Plaintiff is an African American semi-truck driver who was subjected to racial discrimination when he visited a travel center operated by Defendant TA Operating, LLC, on January 11-12, 2023, located at 19 N. 430 U.S. 20, Hampshire, Illinois (hereafter the "Travel Center").

2.      Defendant TA Operating, LLC is a Delaware LLC and operates travel centers throughout the state of Illinois and other parts of the United States.

3.      Defendant TA Operating, LLC's registered agent is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

4. Defendant Shaun Mitchell was employed by Defendant TA Operating, LLC as a Service Center Manager of the Travel Center the time of the misconduct discussed below and is Caucasian.

5. A third Defendant is a currently unknown (male) Travel Center Manager who mistreated Plaintiff at the direction of Defendant Mitchell.

6. The Travel Center in question is located within this judicial district.

7. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this civil action is predicated upon violations of 42 U.S.C. §§ 1981 and 1982.

8. As detailed below, the Defendants violated Plaintiff's discriminated against Plaintiff because of his race, and in doing so, the Defendants violated Plaintiff's contractual and property rights as provided by Sections 1981 and 1982.[1]

9. Supplemental jurisdiction exists over Plaintiff's state law claims as provided by 28 U.S.C. § 1367.

10. Venue is proper in this judicial district because the Travel Center where the complained of conduct took place is located in Kane County, Illinois, and Kane Count is located within this judicial district and division. Further, the material witnesses work within this judicial district and division, including Defendant Shaun Mitchell, who also resides within this judicial district.

## II. Additional Background Allegations

11. In January of 2023, Defendant Shaun Mitchell ("Defendant Mitchell") was employed as a Service Center Manager by Defendant TA Operating, LLC ("Defendant TA".

---

[1] *See, e.g., Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751 (7th Cir. 2006) (discussing the protections afforded by Section 1981 where a truck driver alleged that he suffered discriminatory treatment because of his race when he attempted to purchase gasoline and he was detained by a policy officer at the direction of a truck stop manager).

12.     On January 11, 2023, Plaintiff engaged the services of Defendant TA for the purpose of repairing his semi-tractor trailer.

13.     Thereafter, on January 12, 2023, a disagreement arose regarding the scope and cost of the certain repairs that were being performed by employees of Defendant TA where prior work had been completed by *another* Travel Center operated by Defendant TA.

14.     Defendant Mitchell attempted to charge Plaintiff for work that was unauthorized and substandard.

15.     After Plaintiff told Defendant Mitchell that he was being overcharged, Defendant Mitchell became hostile towards Plaintiff, refused to complete the repairs, and refused to allow Plaintiff to leave the Travel Center with his semi-tractor trailer.

16.     When Defendant Mitchell told Plaintiff he was refusing to release his semi-tractor trailer until Plaintiff paid the amount owed, Mitchell raised his voice and said the following to Plaintiff in an extremely hostile and confrontational tone - "How dare YOU question me about a work order?"

17.     Because Plaintiff dared to question Defendant Mitchell's conduct, Mitchell responded by saying, "I'm going to make you wait until the morning".

18.     After Defendant Mitchell told Plaintiff that he was not going to have the work completed on Plaintiff semi-tractor trailer, Mithell confronted Plaintiff in a loud and aggressive tone and said, "YOU PEOPLE need to be taught a lesson".

19.     When Plaintiff asked Defendant Mitchell "What do mean by *you* people?", Defendant Mitchell said, "Y'ALL PEOPLE need to be taught a lesson" in a louder and more hostile tone than when Mr. Mitchell originally said "YOU PEOPLE need to be taught a lesson".

3

20.     As an African American man, Plaintiff understood that Defendant Mitchell's choice of the words "YOU PEOPLE" and "Y'ALL PEOPLE" were intended to refer to the color of Plaintiff's race.

21.     After Defendant Mitchell said "Y'ALL PEOPLE need to be taught a lesson", Plaintiff asked Mitchell, "Are you talking to me like this cuz I'm Black?"

22.     In response to Plaintiff's questions, Defendant Mitchell said, "No Nigga, I'm not calling you a '*NIGGER*', cuz I have black people in my family."

23.     When Defendant Mitchell spoke these words, he specifically used a soft "a" when he said "Nigga" and said specifically raised his voice in a harsh tone when he said the word "NIGGER".

24.     Plaintiff was stunned by the words that Defendant Mitchell uttered where it appeared that Defendant Mitchell was using the terms "Nigga" and "NIGGER" to *suggest* that he was not acting in a racist manner – when Defendant Mitchell's tone and face suggested otherwise.

25.     After Plaintiff complained about how he was being treated, Defendant Mitchell called the police and attempted to have Plaintiff arrested.

26.     At the request of Defendant Mitchell, and solely based upon the false words of Defendant Mitchell, Plaintiff was charged with disorderly conduct by a police officer employed by the Village of Hampshire, Illinois.

27.     Further, when Plaintiff asked to use a restroom at the Travel Center, Defendant Mitchell had another employee escort Plaintiff through the Travel Center and had the employee stand outside the door while Plaintiff used the restroom.

28.     Despite repeated requests from Plaintiff, Defendant Mitchell repeatedly refused to reverse the unlawful charges and unauthorized repairs.

29.     In refusing to remove the unauthorized charges until the following morning Defendant Mitchell deprived Plaintiff of income where he caused Plaintiff to be late for a pick up.

### III.  Causes of Action

### Count I – Violations of Section 1981 versus All Defendants

30.     Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

31.     As described above, Defendant Mitchell mistreated Plaintiff because of Plaintiff's race (Black/African American) and Defendant Mitchell's race (Caucasian).

32.     42 U.S.C. § 1981 ("Section 1981") provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts" and shall have the same rights "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a).

33.     As to the right to "make and enforce of contracts", § 1981(b) provides that Black citizens have an enforceable right with regard to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

34.     Notably, the Civil Rights Act of 1991 added subsection (b), among other provisions, and intended § 1981 to bar racial discrimination in "all phases and incidents of the contractual relationship." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994).

35.     Further, § 1981(c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

36.     Treating a patron of a Travel Center differently because of their race violates Section 1981.[2]

37.     During Plaintiff's above interaction with Defendant Mitchell, Defendant Mitchell (who is Caucasian) made derogatory and threatening comments to Plaintiff - *because of Plaintiff's race* (Black/African American).[3]

38.     As described above, Defendant Mitchell discriminated against Plaintiff in violation of his rights that are provided by Section 1981.

39.     In doing so, Defendant Mitchell denied Plaintiff of his Constitutional right to make and enforce a written work order (a form of contract) in relation to the repairs that he ordered for his semi-tractor trailer because of Plaintiff's race.

40.     Defendant Mitchell's conduct deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions that he was entitled to because of Plaintiff's race.

41.     Further, Defendant Mitchell's conduct in refusing to properly repair Plaintiff's semi-tractor trailer until the following morning caused Plaintiff to lose income where Defendant Mitchell's conduct caused Plaintiff to arrive late to drop of a load, which then prevented from Plaintiff from picking up another load at the time required by the vendor.

42.     But for Defendant Mitchell's conduct, Plaintiff would have dropped off his load within the time allowed *and* would have been able to pick up another fee-paying

---

[2] *See, e.g., Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 776-77 (N.D. Ill. 1999) (citing *Hill v. Amoco Oil Co.*, 1999 U.S. Dist. LEXIS 11233, No. 97-C-7501, slip op. (N.D. Ill. July 20, 1999) (holding that allegations of a racially discriminatory pre-pay requirement at Amoco-brand gas stations states a claim under §§ 1981 and 1982)).

[3] In *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, (7th Cir. 2007), the Seventh Circuit explained, "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." 496 F.3d at 781-82.

load. Because of the conduct of Defendant Mitchell, Plaintiff was denied considerable compensation.

43. Defendant TA, as Defendant Mitchell's employer, is strictly and vicariously liable for Mitchell's misconduct where Mitchell's interactions with Plaintiff took place within the scope of his job duties, where Mitchell was tasked with interacting with customers like Plaintiff.

44. As a result of Defendant's conduct, Plaintiff's civil rights were violated, and he suffered cognizable injuries.

WHEREFORE, Plaintiff is entitled to the following relief against Defendant TA and Defendant Mitchell:

      a. Compensatory damages;

      b. Punitive damages; and

      c. Legal fees and costs pursuant to Section 1981 via 42 U.S.C. § 1988.

### Count II – Violations of Section 1982 versus All Defendants

45. Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

46. 42 U.S.C. § 1982 ("Section 1982") provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

47. As set forth above, Defendant Mitchell treated Plaintiff differently than Caucasian customers because of the color of Plaintiff's skin.[4]

---

[4] *See, e.g., Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 776-77 (N.D. Ill. 1999) (citing *Hill v. Amoco Oil Co.*, 1999 U.S. Dist. LEXIS 11233, No. 97-C-7501, slip op. (N.D. Ill. July 20, 1999) (holding

48.     As described above, Defendant Mitchell discriminated against Plaintiff in violation of the prohibitions of Section 1982.

49.     In doing so, Defendant Mitchell denied Plaintiff of his Constitutional right to purchase, hold and control his semi-tractor trailer – which is a form of personal property and livelihood – because of Plaintiff's race.[5]

50.     Further, Defendant Mitchell's conduct in refusing to properly repair Plaintiff's semi-tractor trailer until the following morning caused Plaintiff to lose income where Defendant Mitchell's conduct caused Plaintiff to arrive late to drop of a load, which then prevented from Plaintiff from picking up another load at the time required by the vendor.

51.     But for Defendant Mitchell's conduct, Plaintiff would have dropped off his load within the time allowed *and* would have been able to pick up another fee-paying load. Because of the conduct of Defendant Mitchell, Plaintiff was denied considerable compensation.

52.     Defendant TA, as Defendant Mitchell's employer, is strictly and vicariously liable for Mitchell's misconduct where Mitchell's interactions with Plaintiff took place within the scope of his job duties, where Mitchell was tasked with interacting with customers like Plaintiff.

53.     As a result of Defendant's conduct, Plaintiff's civil rights were violated, and he suffered cognizable injuries.

---

that allegations of a racially discriminatory pre-pay requirement at Amoco-brand gas stations states a claim under §§ 1981 and 1982)).

[5] In *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, (7th Cir. 2007), the Seventh Circuit explained, "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." 496 F.3d at 781-82.

WHEREFORE, Plaintiff is entitled to the following relief against Defendants TA and Mitchell:

    a.  Compensatory damages;

    b.  Punitive damages; and

    c.  Legal fees and costs pursuant to Section 1982 via 42 U.S.C. § 1988.

**Count III – False Imprisonment versus Defendant Mitchell**

54.    Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

55.    As described above, on the evening of January 11, 2023, by refusing to repair Plaintiff's vehicle and reverse certain charges until the morning of January 12, 2023, Defendant Mitchell subjected Plaintiff to false imprisonment where Plaintiff was unable to leave at the Travel Center in his vehicle – where Plaintiff was *thousands* of miles away from his home – which is located in the State of Florida.

56.    Furthermore, based upon Defendant Mitchell's actions in causing Plaintiff to be charged with disorderly conduct (in the absence of probable cause), Plaintiff reasonably feared that Defendant Mitchell would attempt to initiate additional charges against him if he attempted to leave the Travel Center.

57.    Defendant TA, as Defendant Mitchell's employer, is vicariously liable for Mitchell's misconduct where Mitchell's interactions with Plaintiff took place within the scope of his job duties, where Mitchell was tasked with interacting with customers like Plaintiff.

WHEREFORE, Plaintiff is entitled to the following relief against Defendants:

    a.  Compensatory damages;

    b.  Punitive damages; and

      c. Legal fees and costs.

### Count IV – Conversion versus Defendant Mitchell

58.    Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

59.    As described above, on the evening of January 11, 2023, by refusing to repair Plaintiff's semi-tractor trailer until the morning of January 12, 2023, Defendant Mitchell subjected Plaintiff to the tort of conversion where Plaintiff was unable to leave at the Travel Center in his semi-tractor trailer, despite Plaintiff repeatedly asking Defendant Mitchell to reverse the unlawful charges and unauthorized repairs.

60.    In particular, Defendant Mitchell, out of spite, wrongfully and without legal authorization assumed control and dominion over Plaintiff's semi-tractor trailer.

61.    Defendant TA, as Defendant Mitchell's employer, is vicariously liable for Mitchell's misconduct where Mitchell's interactions with Plaintiff took place within the scope of his job duties, where Mitchell was tasked with interacting with customers like Plaintiff.

WHEREFORE, Plaintiff is entitled to the following relief against Defendants:

      a. Compensatory damages;

      b. Punitive damages; and

      c. Legal fees and costs.

### Count V – Malicious Prosecution versus Defendant Mitchell

62.    Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

63.    As described above, Defendant Mitchell commenced criminal proceedings against Plaintiff, where Defendant Mitchell caused to be charged with the crime of disorderly conduct by a police officer employed by the Village of Hampshire, Illinois.

64.     The criminal charges were terminated in favor of the Plaintiff.

65.     No probable cause existed for Defendant Mitchell to seek to charge Plaintiff with disorderly conduct.

66.     Defendant Mitchell initiated criminal proceedings against Plaintiff with malice – where Defendant Mitchell initiated criminal proceedings against Plaintiff out of spite because Plaintiff dared to question the legitimacy of the unauthorized work performed on his semi-tractor trailer.

67.     As a result of the criminal charge that Defendant Mitchell initiated and sought, Plaintiff suffered damages as he was required to retain legal counsel to defend the charges that were brought against him. Plaintiff also missed out on work opportunities because of him having to stop working to be able to attend and/or participate in certain court appearances.

68.     In addition to retaining legal counsel, and missing work, Plaintiff was required to pay an appearance fee.

69.     The charge of disorderly conduct was eventually dismissed, resulting in a favorable termination of the charge

70.     Defendant TA, as Defendant Mitchell's employer, is vicariously liable for Mitchell's misconduct where Mitchell's interactions with Plaintiff took place within the scope of his job duties, where Mitchell was tasked with interacting with customers like Plaintiff.

WHEREFORE, Plaintiff is entitled to the following relief against Defendants:

        a.  Compensatory damages;

        b.  Punitive damages; and

        c.  Legal fees and costs.

**Count VI**
**Defendant TA's Liability for Defendant Mitchell's**
**Violations of Section 1981 and 1982**

71.     Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

72.     Treating a patron of a Travel Center differently because of their race violates Section 1981.[6]

73.     During Plaintiff's above interaction with Defendant Mitchell, Defendant Mitchell (who is Caucasian) made derogatory and threatening comments to Plaintiff -

74.     As described above, Defendant Mitchell, as a Service Center Manager of Defendant TA's Travel Center, discriminated against Plaintiff in violation of his rights that are provided by Sections 1981 and 1982 *because of Plaintiff's race* (Black/African American).

75.     In particular, Defendant Mitchell deprived Plaintiff the full use and enjoyment of his semi-tractor trailer where Defendant Mitchell prevented Plaintiff from being able to use his semi-tractor trailer until the morning of January 12, 2023.

76.     Defendant Mitchell's conduct also deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions that he was entitled to because of Plaintiff's race.

77.     As Defendant Mitchell's employer, Defendant TA denied Plaintiff his Constitutional right to make and enforce a written work order (a form of contract) in relation to the repairs that he ordered for his semi-tractor trailer because of Plaintiff's race.

---

[6] *See, e.g., Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 776-77 (N.D. Ill. 1999) (citing *Hill v. Amoco Oil Co.*, 1999 U.S. Dist. LEXIS 11233, No. 97-C-7501, slip op. (N.D. Ill. July 20, 1999) (holding that allegations of a racially discriminatory pre-pay requirement at Amoco-brand gas stations states a claim under §§ 1981 and 1982)).

78.     Further, Defendant Mitchell's conduct in refusing to properly repair Plaintiff's semi-tractor trailer and reverse the charge until the morning of January 12, 2023, caused Plaintiff to lose income where Defendant Mitchell's conduct caused Plaintiff to arrive late to drop of a load, which then prevented from Plaintiff from picking up another load at the time required by the vendor.

79.     But for Defendant Mitchell's conduct, Plaintiff would have dropped off his load with the time allowed and would have been able to pick up another fee-paying load.

80.     Defendant TA, as Defendant Mitchell's employer, is liable for the conduct of Defendant Mitchell.

81.     "Under the theory of *respondeat superior*, an employer can be liable for the torts of an employee … that are committed within the scope of employment." B*agent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007). This is true even if an employee's conduct is "willful, malicious, or even criminal[.]" B*agent*, 862 N.E.2d at 991.

82.     Defendant Mitchell's actions were committed within the scope of his employment as Defendant TA's Service Center Manager.

83.     As a result of Defendant's conduct, Plaintiff's civil rights were violated, and he suffered cognizable injuries.

WHEREFORE, Plaintiff is entitled to the following relief against Defendant TA:

    a.  Compensatory damages;

    b.  Punitive damages; and

    c.  Legal fees and costs.

**Count VII**
***Respondeat Superior* Liability vs. Defendant TA**
**For Defendant Mitchell's Violations of State Law**

84.     Plaintiff incorporates and expressly adopts Paragraphs 1-29 within this Count.

85.     As detailed in Count III, Defendant Mitchell committed the state law tort of false imprisonment and in Count IV, Defendant Mitchell intentionally subjected Plaintiff to severe emotional distress.

86.     Defendant TA, as Defendant Mitchell's employer, is liable for the conduct of Defendant Mitchell on the basis of *respondent superior* liability, where "an employer can be liable for the torts of an employee ... that are committed within the scope of employment." B*agent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007).

87.     Here, Defendant Mitchell's actions were committed within the scope of his employment as Defendant TA's Service Center Manager.

88.     Accordingly, Defendant TA is liable for Defendant Mitchell's conduct even if his conduct was "willful, malicious, or even criminal[.]" B*agent*, 862 N.E.2d at 991.

89.     As a result of Defendant Mitchell's conduct, Plaintiff suffered cognizable injuries.

WHEREFORE, Plaintiff is entitled to the following relief against Defendant TA:

a.   Compensatory damages;

b.   Punitive damages; and

c.   Legal fees and costs.

**Jury Demand**

Plaintiff demands a jury trial.

<u>Dated</u>: August 19, 2024

<u>/s/ James C. Vlahakis</u>

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
312-766-0511 (office)
312-648-6127 (direct)
jamesv@vlahakislaw.com

*Counsel for Plaintiff*